2-15-0412 People of the State of Illinois Plaintiff Appellee v. Attorney Meekey, Defendant Pellis, Argument on behalf of Defendant Pellis, Attorney Mr. Bruce Kirkland, Argument on behalf of Plaintiff Appellee, Attorney Ms. Payne Diaz Are you both ready to proceed? Counselor, when you're ready. May it please the court and counsel. Good morning, Your Honors. The trial court abused its discretion when it declared a mistrial in Tony Meekey's jury trial for driving under the influence of alcohol. The brief veneer mentioned by a state witness, a police officer, on cross-examination that he offered the defendant a preliminary breath test simply did not create a situation where the trial court had no alternative other than to declare a mistrial. Is it your position that had the trial court weighed out all of the consequences and ramifications and circumstances, that it would never have been reasonable for the trial court to have declared a mistrial? Well, whether a mistrial is appropriate is considered by the facts of every case. The trial court abuses discretion simply by not considering properly the law in this case regarding admission of preliminary breath tests. Is it analysis of the law ultimately or that the trial court, because it pretty much just almost immediately said, all right, I have no choice but to grant the mistrial, which is it, or both? It is both. I mean, one of the factors of whether a court abuses discretion in declaring a mistrial is it's due and proper and judicious consideration of alternatives to declaring a mistrial. You know, a rash decision has been found by this court in Dahlberg as one basis of finding that it was not proper exercise of discretion in declaring a mistrial. The fact is that the evidence that was the point of contention here, the admissibility of the preliminary breath test, was indeed ultimately admissible at trial by the defendant as evidence in her defense. She wanted to get that in in the trial court mistakenly after the prosecutor had said it's not admissible under any circumstances. Well, the prosecutor was in part correct. It should have been offered by the defendant in her case, not during the state's case, correct? That's correct. But I think by reading the transcripts, it's a reasonable inference that the prosecutor was mistaken about that point. And after saying that it's admissible at trial, the trial court agreed and ultimately made statements such as it's not admissible by the state, not admissible by you, it just can't come in. So I believe it's a fair inference from the transcripts that both the prosecution and the trial court were laboring under this mistake of law regarding Miss Meekie's ability and right to admit these preliminary breath tests during her case in chief. Which, because it is ultimately admissible, gives the court a reasonable way to resolve this case short of declaring a mistrial. If it's not admissible during cross-examination of the officer, the trial court can simply instruct the jury to disregard the reference to the preliminary breath test in this instance. And it should have known the law and told Miss Meekie that if you want to get this evidence in at trial, you have to wait until it's your case and you can call the officer as a witness and attempt to introduce the results at that time. Because these test results ultimately are admissible, it distinguishes this case from other cases that you see where an attorney will reference a polygraph examination or you have other crimes evidence. Evidence that just flat out is not admissible in a trial, and then your trial court is left with assessing the prejudice, damage control, how to proceed without declaring a mistrial. But here, where you have evidence that ultimately can come in at the discretion of the defendant, then you don't have to declare a mistrial. There are curative measures that the trial court can take short of stopping the trial. And that's significant in this case because it does deprive Miss Meekie of her right to have the case ultimately decided by the jury. You indicated that the results are admissible under the statute, and that's correct. Was your client attempting to admit the results of the test, or do we really not know because she was cut off? I mean, there's some indication that she was trying to get into this evidence in order to impeach the officer because he never mentioned this test on direct, which, of course, he can't mention it on direct according to the case law. Correct. Which would be improper. Right. She was cut off before she was able to develop fully where she intended to go with this. So it's not clear from the record whether she was going straight for the results or there is some indication she wanted to impeach the officer with this information. But, you know, that shouldn't preclude her ability to get it in. The statute doesn't restrict the admission of these preliminary breath test results solely to prove innocence or for the results. You know, she has a right to admit these in her case. Well, she can't use it. Wait a minute. She can't use that statute as a sword instead of a shield. She can't impeach the officer for not mentioning on direct examination that he gave her a breath test. That's using the statute as a sword because, you know, he can't mention it on direct. It would be entirely improper for the state to question him about the PBT on direct, correct? Correct. So for her to then get up on the cross and say, oh, the officer lied because he didn't mention that he gave me this test. But I think that she can admit that during her case in chief and then argue reasonable inferences from that in a closing argument. She can say the results were this and the officer was inconsistent in his explanation of what he did during his investigation of this case. I think that if it comes in during the defense case, then she can use it for to raise reasonable inferences from that evidence. There was no sidebar here, though. The trial court never learned her purpose, correct? No. You know, the trial court kind of defaulted to this total inadmissibility position. She was not asked, what's your purpose? Where are you going with this? No, there was no offer of proof and no inquiry. It was simply, at one point, Ms. Vicki asked, why? Why is this not admissible? And the answer was, because that's my ruling. There was never an explanation as to why it was inadmissible. There was never an explanation as to, but here's why I want it either. She was just cut off on this issue. You know, there was a lengthy sidebar that covered a couple of different evidentiary issues, including a dispute over Miranda warnings, which are relevant to this proceeding. But it wasn't just the PBT discussion. There was a lot going on in the sidebar. When you look at what happened in front of the jury, it was just very brief mention of this test. You know, the officer first started to volunteer that he administered this test during the state's direct examination and was cut off by the prosecution. And then immediately, when Ms. Vicki tried to go into it, there was an objection to sustain, and they discussed it outside the presence of the jury. There's very minimal exposure to the jury of this evidence, which strengthens the argument that there's no prejudice or that this evidence could have come in at a later, more appropriate time. Results could come in. I mean, that's what the statute says, correct? It is. Do we know whether she submitted to the test and what the results were from the record? We do not. We don't know what the results were. I seem to recall that the testimony strongly implied that she took the test. Well, the way the state's fighting it, it certainly appears that they knew that she took the test and there may have been some results, but I don't see in the record where it definitively said that she took the test and what the results were. That's my understanding also. There were immediate objections, and the trial court sustained every objection. It never went beyond that. The trial court is responsible. You know, it's kind of disturbing that we have a jury trial on the charge of driving under the influence, and the prosecutor and the trial court both were confused and didn't understand the rules of admissibility of preliminary breath tests. It can't be a proper exercise of discretion when the error is generated by the prosecutor and by the trial court and that Ms. Minkes ultimately has her right to have her jury or the jury that was selected and sworn decide her case. The test is the abuse of discretion by the trial court, and in this case, because of that misunderstanding of the law, the trial court's failure to properly analyze the situation and reach the proper legal conclusion and properly tell the jury that disregard for this reference to PBT and to instruct Ms. Minkes that she could have admitted at a later time constitutes an abuse of discretion. And then we take the next step. What the actual order appealed from here is Ms. Minkes next moved to borrow re-prosecution, and the case law is clear that if the mistrial was not a manifest necessity, that she cannot be retried on double jeopardy grounds. So the error that we're asking this court to correct is the trial court's rejection of Ms. Minkes' motion to borrow retrial. So if there are no further questions, I would ask this court to reverse the order of the trial court denying her motion to borrow retrial in order that the complaints in this case be dismissed with prejudice.  Good morning, Your Honors. Counsel, may it please the court. As counsel just pointed out, the reason for this appeal is the trial court's denial of defendant's motion to bar the re-prosecution on double jeopardy grounds. But in order to answer or for Your Honors to analyze that, we first need to answer whether the trial court abused its discretion when it declared a mistrial. And in that vein, I would like to apologize for something I proposed in my response brief. As counsel pointed out in his reply brief, this is reviewed for an abuse of discretion. So whether the trial court erred in declaring a mistrial, that should be reviewed for an abuse of discretion, and this court should not be able to affirm on any basis in the record. I stated the correct standard of review, and then somehow I put that in there. I don't know why. So to the extent that that confused the court and counsel, I apologize. As far as defendant's right to be tried before a particular jury, it's not a jury of her choosing, but she has a right to be tried. Her constitutional protection against double jeopardy includes the right to be tried before a particular jury. That right, however, is not unfettered. No party has a right, neither the state nor the defendant, has a right to present a case to a biased jury. Here, by the time the judge declared the mistrial, that jury was unquestionably tainted. We cannot just look at how. Okay, if we look at just what happened when the judge declared the mistrial, that was when Officer Kuecher said, I believe that was the officer Kuecher, when he said that I gave you the PBT. That isolated comment, or I administered the PBT, something along those lines, that isolated comment would not, arguably would not be grounds for a mistrial. However, if you look at the entire case, and as Stahlberg says, we need to look at the facts of the particular case. In this case, there was a pervasive pattern of not only disregarding what the judge said, and that wouldn't go to tainting the jury because those discussions were had at the bench. But when she first asked about the PBT, she asked Officer Kuecher, when did you ask me to blow? At that point, there was a discussion with the judge, and the judge said, you can't bring in this evidence. And the answer, the prosecutor said, this is inadmissible at trial, and the judge agreed. Now, to the extent that the judge believed that the prohibition to introduce the results extended to defendant's case in chief, which is inaccurate, to the extent that the judge believed that, that's not what caused this mistrial. His decision did not rest, his decision to declare a mistrial did not rest on an error of law. Well, what alternatives did the judge explore to declaring a mistrial? What alternatives? I think, okay, well, he didn't explicitly state the alternatives. Well, he didn't explore any, did he? When he said, I have no choice, that indicates that throughout the trial, if we look at this transcript, I think the words, I have no choice at this point, or something along those lines. Yes, he did have a choice. He could have instructed the jury to disregard the questions. He gave a lot of answers. He could have told the defendant, you can call the officer out of order, which happens routinely in DUI cases. Defense attorneys call police officers out of order in the state's case all the time. Or he could have said, ma'am, the question is stricken, offer that evidence in your case. Did the judge explore any of those alternatives? Well, okay, well, I will discuss, try to discuss each in turn. As far as the curative instructions for the jury, defendant was given a lot of leeway. At one point before the mistrial was declared, she asked the officer, well, she asked about the blowing, then she asked about the PBT, and then at one point she said, when did you offer me that unauthorized exam? The jury heard that. Well, whether the jury, you understand the point that that evidence is ultimately admissible, so how is the jury poisoned? The jury is poisoned now because they heard unauthorized exam, and this has been over the course of, the better part of her cross-examination. Well, it's hyper-technical because evidence, that evidence is ultimately admissible. But it's, I'm sorry, it's admissible in her case in chief. It's not admissible in the state's case in chief, so now the state. So you're putting form over substance in an issue of a mistrial. Well, I would disagree, Your Honor, respectfully, because at this point, the state would not be able to, I mean, the state would be limited if it chose to, if it had gotten to the point of redirect to her cross-examination. The state can't then discuss that this, that the PBT is used for purposes. You're telling me that if the judge had allowed her to just do this out of order, that the court would have precluded the state in its redirect from so much as a word about the test? Not so much as a word. Is it a supposition? Not so much as a word, Your Honor. It didn't, I mean, she calls it unauthorized because how many times had both the assistant state's attorney and the court told her, you can't bring this in under any circumstances. It's not admissible. There was no caveat given to her that it's not admissible now. Oh, I'm sorry, not unauthorized attempts to admit. She was referring to the test as being unauthorized. Right, but it wasn't. It could come in. It could come in, but then we would have to speculate that she would put on a case in chief. The judge, she's pro se, it's not the judge's job to hold her in. Her case in chief could have been just recalling the officer, did you give me the portable test, what was the result, and sat down. What was the result? But then the state would have still been stuck with what she said before. Well, the state would be stuck with that during cross-examination if she had chosen to go on with the case in chief. The state would be stuck with her direct. During cross-examination, they would be limited to those questions. She could do whatever she wanted and say, did you not give me an unauthorized exam? The officer could try to explain that it's not unauthorized, but the jury, we can't unbring that back. She already said to the jury, he administered this unauthorized exam. And at the close of trial, the trial judge would instruct the jury that what the attorneys say is not evidence. The evidence comes from the witnesses and the exhibits. And the witness then would be allowed to explain, especially redirect, that this test is fully authorized by the law, correct? So the evidence in the case would have been that the test was authorized, whereas her questioning would have said unauthorized. We would have to speculate. We would have to speculate that that's what Officer Keecher would have said had we gotten to a point where she was allowed to present her case in chief. We would be having a different conversation, Your Honors, if she had been allowed to put on a case in chief and then had tried to introduce the results, which, by the way, unlike most cases, we know what her theory of the case was here. She kept saying throughout the record that the officer perjured himself when he did not address the PBT during the direct. He could not have done that. She had no intention. It's clear from the record. So I disagree with any suggestion that we don't know what her theory was. It is clear that she said numerous times that the officer was lying and that he was perjuring himself by not talking about the PBT. She wasn't trying to introduce results as contemplated by the statute. The statute specifically says results. So to speculate that if she had gone on to her case in chief, the officer could have corrected or, you know, unrung that bell, that it's just too – it calls for too much speculation. At that point, the jury, given the entire trial, we can't just look at that one comment in context that the officer said, I administered the PBT. It's the fact that before that, she brought this up four times, and then during one of the times when she tried to introduce this, during the state's case in chief, which she's not allowed to do, for improper purposes, and I don't know if they are improper purposes because that has not been addressed as far as I know by any cases, but the statute says results. She was trying to introduce it to impeach the officer for something that he's not even allowed to talk about. So not only was she trying to do it during an inappropriate time, she was trying to do it for something that, as far as I'm concerned, or case law has not found to be permissible. The statute says results. But it's pretty clear that the trial court and the prosecutor were trying to keep it out for entirely different reasons. Not for the improper impeachment, but just because they said that getting into the PBT entirely is inadmissible, correct? Arguably, it was because of the context. The prosecutor did say at trial. I agree with that. But the question here is whether the judge abused his discretion. The judge arguably was responding to what was occurring at the time when it was occurring, which was during the state's case in chief. But if your honors find that his comments do suggest or even explicitly state that I don't recall exactly what he said. Here's a common sense way to look at what he said. He believes it was inadmissible at all, completely, entirely. And that puts his ruling in a whole different light. He was mistaken as to the law. Because if he had believed as the law is clear that the defendant is allowed to introduce the PBT, he would have just simply said, ma'am, you can ask those questions during your case. That's what a reasonable judge would have done. Would you agree? I disagree that we should be putting that much onus on the judge. If the judge knew that this was admissible in her case, you're saying he would not have told her? I don't know if he would have told her. I think he could have told her, certainly. I don't think it's his job to hold her hand. Is the judge obligated as a gatekeeper of the evidence to make sure when there's an objection that the judge rules on the objection appropriately? And here the judge said it's not admissible at all. Correct? The judge did say at some point it's not admissible at all. Right. That being said, even – well, I don't believe that the fact that the judge did not tell her to put this on in her case in chief – well, first of all, that would have been a fruitless effort, as the record shows. She did not know what a case in chief was. She just didn't even know. So that would have been fruitless. But at the point when he made this ruling, he was not wrong as to – he may have been – arguably, he was wrong as to whether it could come in during – But it's perfectly admissible later. Show me where you could draw that inference from anything that this trial judge said. Honestly, I can't. I cannot draw that inference. The prosecutor was under the impression that it was inadmissible. I think that's clear from the record. Just inadmissible during the state's case and during her case. To the extent that the judge believed that to be accurate, that's not what his ruling was based on. His ruling was based on the fact that – well, it's not – it may not be admissible later, but it certainly isn't admissible now. And now we have a tainted jury. So even if the judge was under the impression that – and you're right. I agree with Justice Jorgensen. I can't draw an inference that he believed that it would have been admissible later. However, we can't speculate as to whether she would have tried to introduce that – whether she would have tried to put on a case in chief. And if so, whether she would have tried to introduce that during her case in chief. And if so, whether he would have barred her from doing so. You mentioned speculation a couple times. Wasn't this – the fact that we are left here to speculate what may have happened, isn't that in fact caused by the trial court's lack of investigation, lack of inquiry into where are you going with this? And, you know, then perhaps giving limiting instructions. You know, as you said, unauthorized test. The trial court could have instructed the jury. This is not an unauthorized test. The trial court could have instructed the jury. This is improper impeachment. It's not to be used for that purpose because the officer was not allowed to talk about that on direct examination. And there's a lot of things the trial court could have done other than what appears to be somewhat of a knee-jerk reaction declaring a misdraft. I would disagree that it was a knee-jerk reaction just because of the pervasive pattern. But regardless of the – I mean, the case law seems to say regardless of the pattern, the court still has to consider alternatives. And there's – if you – can you point to anything prior to this exchange when he said I have no alternative but to grant him, where there was some consideration of any way to prevent her from what you perceive to be her attempt to impeach him rather than to get the result in? I mean, did the trial court stop at any time and caution her or say, you know, direct the state to submit a limiting instruction later or attempt to instruct the jury to disregard? No. And that being said, the trial judge did give the parties an opportunity – I disagree that it was a hasty decision. The trial judge did give the parties an opportunity to present their positions before declaring the mistrial. And the prosecutor said giving a curative instruction at this point would not fix it because we can't get into the results. Now the jury – I'm sorry – the jury is going to be wondering whether the test was administered, if so, what the results were, and we cannot get into that. So once the prosecutor said that and then defendant – I don't recall exactly what her argument was. I know she objected, obviously, to the motion for the mistrial, but the judge was able to consider that because the prosecutor put it before him. You know, what we are suggesting is that every time a defense attorney on cross-examination attempts to introduce evidence that is clearly inadmissible, let's hypothetically, that that would warrant the grant of a mistrial. For example, a police officer is on the stand and the defense attorney, which happens all the time, in a leading question, asks about a post-arrest statement the defendant made claiming innocence. And the judge says, sustain, disregard the question. That happens every day. Now can the state ask for a mistrial in that circumstance? If we take that isolated comment, Your Honor, no. What if it's done three times? What if a defense attorney does it three times? It would depend – I would say it would depend on the facts of the case and the context in which she did it. And over her cross-examination, during the course of her cross-examination, which lasted longer than the prosecutor's direct, she did it numerous times. Yeah, and in this instance, it's evidence that would have been admissible in her case. It would have been admissible in her case. Is there any obligation on the state to admonish its witnesses as to what it can and cannot testify? For example, there's a motion in Lemonade, and there's been a ruling, you cannot introduce X. Wouldn't you admonish your witnesses? You cannot go here. Wouldn't it also have been incumbent to say to every police officer, if you've given a PBT, you cannot talk about that in the state's case-in-chief? And yet this officer blurts it out. Your Honor, I don't know if it's an obligation. I honestly don't know if it's an obligation. I believe it should be done, obviously, through witness preparation. Here, the officer was not eager to talk about it. I'm sorry. Oh, I'm sorry. Here, the officer was not eager to talk about it. During direct, he limited his discussion to three of the two other road tests and then the urine and the blood sample. But he's under oath. She goaded him into asking. He had no option but to say, the next thing I did. Counsel, even when there's a motion in Lemonade, witnesses are under oath. I don't know what his appropriate answer would have been to, what did you do next? I can't. Maybe I can't discuss it. But I don't know if that would have even been appropriate. That being said, the officer didn't cause the mistrial. It was her disregard of the court's continuous orders and her tainting of the jury that led to this mistrial. So her question, then, what did you do once I failed them, being the field sobriety test? What did you do once I failed them? That's goading him into PBT? If you look at the questioning before that and then you look at her explanation as to why she asked that, she said, the reason I asked that is because I wanted him to tell me something along these lines. It's not verbatim, obviously, but I wanted him to tell me or tell the jury or, you know, I wanted him to say that he gave me this unauthorized exam and that he's lying and he's perjuring himself. She explained that to the judge, that that was her trial strategy. She said, Your Honor, you can't tell me. That may be her intent, but I'm talking about the question. The question itself is basically, what did you do? What did you do next? She had asked him many questions before that, and he had given what I would – I wouldn't go so far as to say every possible answer, but he gave a lot of answers, and I think that this was the answer – it was the answer she was looking for, and in my opinion it was – or in my mind it's the answer he had to give. And, you know, right after that the State moves to the mistrial. Correct. And doesn't even suggest an alternative, just moves to the mistrial. The State does not suggest an alternative, but the State did discuss the alternative of – say, Your Honors – or Your Honor, I'm sorry – a curative instruction at this point wouldn't matter, and I would analogize this to prosecutorial misconduct or prosecutorial error cases where at some point the pervasive pattern can't be cured by an instruction. You're not going to make any headway if I keep mentioning pervasive pattern. We know what the pattern is. It's a few questions. Right? How many questions were there? There were at least four. Four? Questions. There were at least four questions that led to it. And how many times did the officer mention PBT? PBT twice, and then she asked about unauthorized exam, and then the court stopped the officer from answering. And that's it. And I believe that that's a pervasive pattern given the duration of this trial. This is not a murder case that went on for days. I mean, given the duration of how long this went on for. Yeah, the bulk of her cross-examination was trying to get this in. And so we submit that the judge at no point – or no, at that point he did not have any reasonable alternatives, and we could speculate as to alternatives that could have – that would have been reasonable, but at that point there would be no reasonable alternatives, and that there was a manifest necessity. We understand that it's a high degree of necessity, but at that point the jury was tainted. And if Your Honors have no further questions. Any final statement? We just ask for those reasons that Your Honors affirm the judgment below. Thank you so much.